# Sarah A. McDonald,

### *vs.*

## The City of Red Wing.

A city is not liable for the destruction of a building torn down to arrest the progress of a fire, unless such liability is created by Statute; and it makes no difference whether such building is torn down under the direction of the City Officers assuming to act in their official capacity, or by the citizens and bystanders of their own motion.

*It seems* that the destruction of the building, under such circumstances, is not a taking of private property for public use; but if it be, the city is not liable, unless the liability is imposed by Statute.

This action was brought in the District Court for Goodhue County. Issue was joined, and the cause tried before a jury, who found a verdict for plaintiff for $500. The defendant made a motion for a new trial, which was denied, and from the order denying the same, defendant appeals to this Court. A sufficient statement of the case appears in the opinion of the Court.

D. M. Taber & W. C. Williston for Appellant.

W. Colvill for Respondent.

*By the Court*—Berry, J.—As stated by the plaintiff's counsel in his brief, "in this case, a building was torn down and destroyed to prevent the spreading of a conflagration in

Sarah A. McDonald v. The City of Red Wing.

the City of Red Wing." The plaintiff brings this action against the city to recover the value of the building, with other incidental damages. We are of opinion that the city cannot be held liable in any view. Its charter, which is declared to be a public act, is found upon page 181, Laws 1864. Being a creature of the statute, the City of Red Wing, and its officers, derive all their powers from the statute. *Goodnow vs. Commrs. Ramsey County*, 11 *Minn.* 40. We may assume that the destruction of the building by the fire prevailing was not inevitable; granting this, the plaintiff insists, "that the building having been torn down to stop the progress of the fire, * * she is entitled to recover in this action, no matter whether it was done by the defendant, through its expressly authorized officials, or by the citizens and bystanders at said fire of their own motion."

I.—The municipal corporation—the city—could do nothing through its officers, or otherwise, except what was authorized by the charter; and upon an examination of the charter, we are unable to discover any grant, to the city, or to the officers, of authority expressed or to be implied, to tear down and destroy buildings to arrest the progress of a fire; nor do we find in the enumeration of the purposes for which ordinances may be passed, any mention of the subject, or any general language in which it might be comprehended. It follows, that if the officers of the city directed the act complained of, they acted upon their own responsibility, without official authority, and the city is not holden for the consequences from the fact that they were its officers, even if they assumed to act in their official character.

II.—As to the other branch of the counsel's proposition —that the city is liable if the act complained of was done " by the citizens and bystanders of their own motion"—if the city is liable under such a state of facts, this liability, not

being imposed by statute, must depend upon some principle or rule of the common law. In *Taylor et al., vs. Inhabitants of Plymouth*, 8 *Met.* 465, which was an action against a town to recover compensation for a building pulled down to stop a fire, Ch. J. Shaw says : " In order to charge the town, the remedy being given by statute only, the case must be clearly within the statute. Independently of the statute, the pulling down of a building in a city or compact town, in time of fire, is justified upon the great doctrine of public safety, when it is necessary. *Mouse's case*, 12 *Co.* 63. *In* 12 *Co.* 13, *Lord Coke*—putting the case as an illustration of a general proposition, that what the immediate safety of the public requires is justifiable— says, " for saving of a city or town. a house shall be plucked down, if the next be on fire." It is one of those cases, to which, says Mr. Justice Boller, the maxim applies, *salus populi suprema est lex*, 4 *T. R.* 797. But if there be no necessity, then the individuals who do the act shall be responsible. This is the more reasonable, as the law (speaking of the Massachusetts Statute) has vested an authority in the proper officers, to judge of that necessity. But the town is responsible, by force of the statute only, and such responsibility is limited to the cases specially contemplated." See also *Ruggles vs. Inhabitants of Nantucket*, 11 *Cushing*, 435; *Parsons vs. Pettengill*, 11 *Allen* 511; *Mayor of New York vs. Lord*, 17 *Wend.* 290; *S. C.* 18, *Ib.* 132; *Stone vs. Mayor of New York*, 25 *Wend.* 174; *Russel vs. Mayor of New York*, 2 *Denio* 461.

,*Russell vs. Mayor of New York*, was a case in which an action was brought against the city upon an allegation, (as stated by Mr. Justice Bronson), that the property of the plaintiff had been taken for public use by the defendants, the Mayor and Aldermen. The property consisted of merchandize which was destroyed, under the order of the Mayor and

Sarah A. McDonald v. The City of Red Wing.

Aldermen, by the blowing up of a building containing the same, in the great fire of December, 1835. As the plaintiff had no interest or estate in the building, his action could not be brought under the statute providing compensation for buildings destroyed for the purpose of arresting fires. Mr. Justice Bronson says: "It is true that the statute has, to some extent, charged the damages of those whose property may be destroyed upon the corporation. * * It is sufficient to say that the statute gives a right, where none would have existed without it, and points out the remedy; and where that is done, the statute remedy can alone be pursued. If the case of the plaintiff has not been provided for by the statute, it is either his misfortune, or he must take such remedy as may be found in the common law, and that will not charge the defendants with the consequence of an act which they neither did, nor authorized to be done." See also *Hale vs Lawrence*, 3 *Zabriskie*, 590; *Sarocco vs. Geary*, 3 *Cal.* 69. These authorities, we think, clearly exonerate the city from liability under any rule or principle of common law.

III.—It is, however, contended by the plaintiff's counsel, that the destruction of the building was a taking of private property for public use, and that, therefore, the owner is entitled to compensation from the public. The opinion of Ch. J. Nelson, in *Mayor vs. Lord*, 17 *Wend.*, 285, referred to by counsel in support of this position, is certainly not very explicit or positive on this point, while the opinion of Senator Verplanck, in 25 *Wend.* 172, is decidedly against the view taken by the counsel. In *Russell vs. Mayor, &c., supra*, Mr. Justice Bronson remarks, that it is said, "that the plaintiff may have an action by virtue of the seventh section of the seventh article of the constitution, which provides that private property shall not be taken for public use without just compensation. Without going much at large into this question,

I am of opinion that the case does not come within this clause of the constitution. If the property was "taken" by anybody, it was not taken by the corporation of the city of New York, nor for their use. * * * * * And the property was not taken "for public use"; but it was destroyed to prevent the spreading of a conflagration, and thus saving the property of other persons in the immediate neighborhood. It was taken for private use. Nine-tenths of the city had little or no interest in the question, and the corporation, as such, had none at all." See also *Op. Senator Sherman* 473; *Op. Senator Porter* 483; *Stone vs. Mayor N. Y.*, 25, *Wend.* 173; *Op. Senator Verplanck. Hale vs. Lawrence*, 3 *Zabriskie* 590. *Sarocco vs. Geary*, 3 *Cal.* 69. We are inclined to the opinion in the case at bar, that the destruction of the plaintiff's building was not a taking of private property for public use within the meaning of the constitutional provision referred to. But admitting that it was such taking, we can perceive no way in which the City of Red Wing can be held responsible for it without some express statute imposing the responsibility.

With this view of a question which goes to the foundation of this action, it is of course unnecessary to consider the other points presented by counsel. The order denying the motion for a new trial is reversed.